# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JARED H. GOODIN, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. CIV-17-204-RAW-SPS |
| ) | |
| COMMISSIONER of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The claimant Jared H. Goodin requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. She appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision should be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: (1) whether the decision was supported by substantial evidence, and (2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was twenty-three years old at the time of the administrative hearing (Tr. 41). He completed eleventh grade, and has worked as a cashier, stocker, and cleaner (Tr. 22-23, 259). The claimant alleges he has been unable to work since an alleged onset date of June 30, 2011, due to ADD, ADHD, asthma, depression, anxiety, and insomnia (Tr. 15, 258).

### Procedural History

On August 12, 2014, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Susan W. Conyers conducted an administrative hearing and determined that the claimant was not disabled in a written decision dated March 30, 2016 (Tr. 13-24). The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She found that the claimant had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but that he had the nonexertional limitations of: performing simple and routine tasks consistent with unskilled work, with regular and routine tasks, few

changes in the workplace, and no tasks performed on a team, conveyor belt, or other fast-paced high volume production criteria, as well as no tasks involving the handling of money. Finally, she stated that the claimant would do best with tasks involving no contact with the general public (Tr. 17). The ALJ thus concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *e. g.*, floor waxer, laundry bagger, and shirt presser (Tr. 22-24).

## Review

The claimant contends that the ALJ erred by: (i) failing to assess whether he meets Listing 12.05, (ii) failing to properly consider two other source opinions as to his limitations, (iii) improperly determining he could perform the job of shirt presser, and (iv) failing to include all of his limitations in formulating the RFC, which in turn affected the jobs identified. The undersigned Magistrate Judge finds these contentions unpersuasive for the following reasons.

The ALJ determined that the claimant had the severe impairment of borderline intellectual functioning with attention deficit disorder, as well as the nonsevere impairment of asthma (Tr. 15-16). The relevant medical evidence as to the claimant's impairments reflects that the claimant was flagged for special education services in the seventh grade, with a composite IQ score of 78, described as low average (Tr. 353-354, 531). The results of this Stanford-Binet Intelligence Scale were as follows: 84 for Verbal Reasoning SAS, 88 for Abstract/Visual Reasoning SAS, 90 for Quantitative Reasoning SAS, 62 for Short Term Memory SAS, and a composite score of 78 (Tr. 531). The narrative stated that the

claimant functioned at the borderline intellectual functioning level in light of his short term memory problems, but that otherwise he functioned at the low average level (Tr. 531).

In the ninth grade, he was administered the WRAT 4 exam, and scored in the below average to low categories, with scores as follows: 83 for Word Reading, 79 for Sentence Comprehension, 84 for Spelling, 73 for Match Computation, and 79 for Reading Composite (Tr. 518). Even as a senior in high school, the claimant was noted to need accommodations and modifications in the general curriculum, and that he could be argumentative with his teachers (Tr. 357, 365). Upon the claimant's graduation based on credits earned, he was noted to be social and able to make and maintain friendships, and that he would be able to work and live independently (Tr. 387). He was ranked 94/95 students, with a GPA of 1.14 (Tr. 394).

On August 10, 2014, Parind Shah, M.D., conducted a psychiatric evaluation of the claimant (Tr. 573-574). Dr. Shah estimated the claimant's IQ to be between 70-79, noting that the claimant was able to follow a three-step command without difficulty, was able to correctly draw the face of a clock indicating the time, and was employable (Tr. 573). He noted the claimant's reported history of depression and ADD, but that the claimant was not on medications for ADD, and the only diagnosis was from 2004 and it was "guarded" (Tr. 574).

On October 9, 2014, the claimant presented to Mental Health Services of Southern Oklahoma ("MHSSO") for screening and assessment (Tr. 593). The intake form noted that the claimant had graduated high school and had an average level of intellectual functioning. The form further indicated that that the claimant had previously worked at a convenience

store but "it just didn't work out" (Tr. 596).  The claimant reported that he wanted to get back on ADD medication "to see if it worked" (Tr. 599).  He was assessed with ADD without mention of hyperactivity (Tr. 600).  Medication Management notes from MHSSO indicate a diagnosis of ADD with hyperactivity, and a willingness to prescribe Adderall, which was switched to Vyvanse when he could not afford Adderall (Tr. 660-662).  On February 26, 2015, counselor Evelyn Southers encouraged the claimant to find a job (Tr. 666).  A follow-up assessment of the claimant on May 27, 2015, completed by another counselor, indicated that the claimant's mother believed he was incapable of work until medications started to make a difference, and the counselor noted that the claimant's prognosis was fair because it was unclear how much of the claimant's participation was his own and how much was "to pacify his mother" (Tr. 679).

On October 11, 2014, Dr. Sung Choi, M.D., conducted a physical examination of the claimant (Tr. 580-582).  He included diagnoses of ADHD and asthma, but stated that there were no physical abnormalities with respect to range of motion or neurovascular stats, and that the claimant had no active depressive or anxiety symptoms to report that day (Tr. 582).

On November 6, 2015, Licensed Social Worker Evelyn Southers sent a letter stating that the claimant "continue[d] to experience extreme limitation in maintaining social function due to symptoms of [ADD] which is complicated by Post-Traumatic Stress Disorder," and stated he had "constant deficiencies" of concentration and persistence of effort, which affected him both socially and emotionally (Tr. 697).  She continued, stating that the claimant would have a significant deterioration in his ability to cope with daily

demands, that he would withdraw from situations that require him to do things he is incapable of doing, and that he is extremely hypervigilant in his daily living. She asserted that he was therefore ill equipped to maintain any type of gainful employment (Tr. 697). Loren Felts, B.A., BHCMII, sent nearly identical letters on December 3, 2015, and again on April 26, 2016 (Tr. 698, 702).

State reviewing physician Kieth McKee, Ph.D., found the claimant was markedly limited in the three typical areas of ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general public, as well as moderately limited in the ability to respond appropriately to changes in the work setting (Tr. 116-118). Dr. McKee concluded that the claimant could perform simple tasks dealing with objects and/or non-complex data with routine supervision, that he retained adequate social skills to respond appropriately to supervisors and peers on a superficial work basis, that he would work best in environments that require no more than incidental interaction with the general public, and that he was aware of basic hazards and could adapt to a lower stress work environment that does not involve numerous changes in daily routines or work duties (Tr. 118). On reconsideration, "CMK, Psy.D." affirmed Dr. McKee's findings as written (Tr. 133-135).

In her written opinion at step three, the ALJ looked at Listing 12.05, including paragraphs A, B, and C, and concluded that the claimant did not meet the criteria for any of these listings (Tr. 17). At step four, the ALJ summarized the claimant's hearing testimony as well as most of the medical evidence in the record. As relevant here, the ALJ summarized Dr. Shah's findings, as well as the records from MHSSO. She specifically

noted the three identical letters, and that they were given no weight because they were not acceptable medical sources, there was no medical evidence or record from MHSSO or anywhere else to support a diagnosis of PTSD, and the statement regarding being ill equipped to work encroached on an issue reserved to the Commissioner (Tr. 21). She noted the claimant's history of special education, but found it supported a finding that he could function on a daily basis with some limited mental capacity (Tr. 22). Additionally, she found that the fact that he did little besides play video games all day supported an ability to concentrate, and that the records indicated that the claimant did not do chores or drive because he did not want to (Tr. 22). Finally, she noted that the claimant had worked for over a year, and that he had been let go because "someone had to be let go," which was unrelated to the claimant's ability to function (Tr. 22). The ALJ then concluded that the claimant was not disabled.

The claimant first asserts that the ALJ erred at step three by failing to find that he met Listing 12.05 (in particular Listing 12.05C), and the ALJ should have developed the record further on this point. At the time of the ALJ's disability determination, to establish intellectual disability under Listing 12.05C the claimant would first have to satisfy the diagnostic description included in the introductory paragraph by showing that he possessed "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i. e.*, . . . onset of the impairment before age 22." 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.05 (Effective August 12, 2015 to May 23, 2016). This initial requirement is referred to as the "capsule definition." *Peck v. Barnhart*, 214 Fed. Appx. 730, 736 (10th Cir. 2006) [unpublished

-8-

opinion]. In addition to satisfying the capsule definition of intellectual disability, the claimant would also have to satisfy two additional prongs in order to meet the requirements of Listing 12.05C: "a valid verbal, performance, or full scale IQ of 60 through 70 *and* a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]" 20 C.F.R. pt. 404, subpt. P, app. 1 (Effective August 12, 2015 to May 23, 2016) [emphasis added]. While there appears to be no question that the claimant suffered from some measure of deficits in adaptive functioning before the age of 22, the ALJ noted that intelligence testing had revealed a score of well over 70 (Tr. 531).

The claimant nevertheless asserts that he had additional impairments and might have met Listing 12.05C had he been given further intelligence testing, *i. e.*, that the ALJ should have further developed the record on this point. A social security disability hearing is nonadversarial and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. United States Department of Health & Human Services*, 13 F.3d 359, 360-61 (10th Cir. 1993), *citing Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, "it is not the ALJ's duty to be the claimant's advocate . . . The claimant continues to bear the ultimate burden of proving that []he is disabled under the regulations." *Id.* at 361 [citations omitted]. Furthermore, the ALJ has "broad latitude" in deciding whether or not to order a consultative examination. *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997), *citing Diaz v. Secretary of Health & Human Services*, 898 F.2d 774, 778 (10th Cir. 1990). The claimant contends that the ALJ should have ordered such an examination here on his own motion because the claimant was unrepresented at the administrative hearing and he did

-9-

not know to request one. But in any event, there was nothing in this case to indicate that further evaluation was necessary to resolve questions related to the claimant's IQ, *i. e.*, no evaluator in the record suggested the claimant's IQ would fall below 70. Accordingly, the undersigned Magistrate Judge finds no error by the ALJ in failing to further develop the record on this point.

The claimant next contends that the ALJ erred in evaluating the opinions of Ms. Southers and Ms. Felts by ignoring their statements regarding his deficits in concentration, persistence, pace, and the ability to cope with daily work demands. He asserts that because a doctor signed off on all their treatment notes, the ALJ should have recontacted the clinic to determine if an acceptable medical source endorsed those limitations.

Social Security regulations provide for the proper consideration of "other source" opinions such as those provided in this case. *See, e. g., Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that other source opinions should be evaluated with the relevant evidence "on key issues such as impairment severity and functional effects" under the factors in 20 C.F.R. §§ 404.1527, 416.927), *quoting* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *3, *6 (Aug. 9, 2006) ("[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."). The factors for evaluating opinion evidence from "other sources" include: (i) the length of the relationship and frequency of contact, (ii) whether the opinion is consistent with other evidence, (iii) the extent the source provides relevant supporting

-10-

evidence, (iv) how well the source's opinion is explained, (v) whether claimant's impairment is related to a source's specialty or area of expertise, and (vi) any other supporting or refuting factors. *See* Soc. Sec. Rul. 06-03p at *4-5; 20 C.F.R. § 404.1527(d). The ALJ's treatment of the opinions of Ms. Southers and Ms. Felts met these standards. In particular, the ALJ noted that their letters indicated a diagnosis of PTSD found nowhere in their own medical records, rendering them less than persuasive. When all the evidence is taken into account, the undersigned Magistrate Judge is satisfied that the ALJ's conclusion that the claimant could perform the assigned RFC is supported by substantial evidence.

The claimant also contends that he cannot perform the job of shirt presser because it requires a reasoning level of two and the ALJ limited him to simple and routine tasks consistent with unskilled work. The "shirt presser" position has a reasoning level of 2, which requires an individual to "apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." DICOT § 363.685-026. This is in conflict with the RFC finding by the ALJ that the claimant should not be required to handle complex instructions. *See* Soc. Sec. Rul. 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000) ("When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the [ALJ] must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The [ALJ] will explain in the determination or decision how he or she resolved the conflict. The [ALJ] must explain the resolution of the conflict irrespective of how the conflict was identified."). However, the claimant offers no challenge to the other jobs identified, floor waxer, DICOT

§ 381.687-034, and laundry bagger, DICOT § 920.687-018, which contain no such conflict. Accordingly, the error identified with the job of shirt presser is classified as harmless error, because there are still jobs the claimant can perform. *See, e. g., Stokes v. Astrue*, 274 Fed. Appx. 675, 684 (10th Cir. 2008) (finding any error on whether claimant could perform job was harmless error since there were still two jobs claimant could perform and no "reasonable factfinder could have determined that suitable jobs did not exist in significant numbers in either the region where Ms. Stokes lives or several regions of the country.").

Finally, the claimant asserts that the ALJ failed to incorporate all of his limitations in the RFC, in light of his moderate limitations related to concentration, persistence, and pace, as well as GAF scores and his work history and history of special education. The Tenth Circuit has stated that an "ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment." *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015). Although "[t]here may be cases in which an ALJ's limitation to 'unskilled' work does not adequately address a claimant's mental limitations," *Id.*, at 1204, the undersigned Magistrate Judge finds here that the RFC limitations adequately accounted for the claimant's moderate limitations. Specifically, the ALJ limited the claimant to unskilled work, then further clarified that he should be limited to regular and routine tasks, few changes in the workplace, with no tasks performed on a team, on a conveyor belt, or other fast-paced, high-volume production criteria, and with no tasks involving the handling of money (Tr. 17). *See Nelson v. Colvin*, 655 Fed. Appx. 626, 629 (10th Cir. 2016)

-12-

("Unskilled work does not require . . . the ability to maintain attention and concentration for extended periods, an area in which Dr. Tabor noted a moderate limitation.").

The ALJ's written opinion indicates that he considered the entire record, determined an appropriate RFC and concluded that the claimant was not disabled because there was work that he could perform. *See Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard*, 379 F.3d at 949. All of this was "well within the province of the ALJ." *Corber*, 20 Fed. Appx. at 822 ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), *citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946. The essence of this appeal is that the Court should reweigh the evidence in the record and reach a different result, which the Court simply may not do. *See Casias*, 933 F.2d at 800 ("In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency."). Accordingly, the decision of the Commissioner should be affirmed

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that

the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 1st day of March, 2019.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**